IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WRI INVESTMENTS III LLC,<br>a Washington limited liability company,<br><br>            Plaintiff,<br><br>    v.<br><br>CHARLES BEIRD, an individual,<br><br>            Defendant. | Case No. 08 CV 4659<br><br>Judge Kennelly<br><br>Magistrate Judge Cox<br><br>JURY DEMAND |

## FIRST AMENDED COMPLAINT

Plaintiff WRI Investments III LLC, a Washington limited liability company, through its attorneys, alleges as follows for its First Amended Complaint against Defendant Charles Beird:

## PARTIES

1.    Plaintiff WRI Investments III LLC, at all relevant times, ("Lender") was and is a Washington limited liability company, with its principal place of business in Seattle, Washington.

2.    Defendant Charles Beird ("Guarantor"), at all relevant times, was and is an individual, who upon information and belief, is a citizen of Illinois.

## JURISDICTION AND VENUE

3.    This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that the parties are citizens of different States and the matter in controversy exceeds the sum of $75,000 exclusive of interest, costs and attorneys' fees.

4.     Plaintiff Lender, a Washington limited liability company, has three members: Weyerhaeuser Realty Investors, a Washington corporation with its principal place of business in Washington state, MIG Corporation, a Washington corporation with its principal place of business in Washington state, and Saltchuk Real Estate Investments, Inc., a Washington corporation with its principal place of business in Washington state.  Defendant is a citizen of Illinois.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) in that Defendant is a citizen of the State of Illinois and a resident of this judicial district, and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

### BACKGROUND

6.     On or about May 17, 2005, Lender made a loan ("Loan") to Pinehurst Community IV, L.L.C., an Illinois limited liability company ("Borrower"), in the principal amount of $1,809,637.  The Loan is evidenced by a Promissory Note dated May 17, 2005, a true and correct copy of which is attached hereto as Exhibit A ("Note").

7.     Borrower sought the Loan in order to facilitate the acquisition and development of property in Joliet, Illinois in conjunction with the Silver Leaf home development project (the "Project").

8.     For good and valuable consideration, the receipt and sufficiency of which was acknowledged, and in order to induce Lender to enter into the Loan Agreement and to make the Loan, Guarantor agreed to and entered into a written Guaranty ("Guaranty") of the Loan, in favor of Plaintiff, to pay Lender or its order any and all indebtedness of Borrower to Lender, and to perform any and all obligations of Borrower under the Note.  A true and correct copy of the Guaranty is attached hereto and incorporated hereto as Exhibit B.

9.      Guarantor was President of Borrower at the time of the Loan.

10.     The Loan matured on May 12, 2008, but remains unpaid, and is therefore in default pursuant to its terms.

11.     In addition, the monthly interest payments that became due under the Loan on September 1, 2007 and continuing to May 1, 2008 have not been paid by Borrower.

12.     As of May 29, 2008 there is now due and owing the sum of $2,373,238.97 including interest at the default rate, but not including attorneys fees and costs.

13.     On May 29, 2008, Plaintiff made a demand on the Borrower and the Guarantor for the amount due in the form of a Notice of Default.  A true and correct copy of the Notice of Default (the "Notice") is attached hereto as Exhibit C.

14.     Despite this demand, as of the date of the filing of this Complaint, Plaintiff has received no payment(s) from either Borrower or Guarantor.

## FIRST CAUSE OF ACTION

(Action On and for Breach of Written Guaranty Contract)

15.     Plaintiff realleges paragraphs 1-14 as though fully set forth herein.

16.     Defendant is in material breach of the Guaranty in that he has failed on demand to pay on the Guaranty and to fulfill his obligations under the Guaranty, including by failing to pay the full or any part of the amount due under the Note.

**WHEREFORE**, Plaintiff WRI Investments III LLC respectfully requests this Honorable Court to enter an order:

(1)     for judgment in its favor and against Defendant, Charles Beird, in the amount of $2,373,238.97, plus interest accrued since May 29, 2008;

(2)     court costs and attorney's fees; and

(3)    any other relief that the Court deems just and proper.

## **JURY DEMAND**

Plaintiff WRI Investments III LLC hereby demands a jury trial.


Dated:  August 19, 2008                    **WRI INVESTMENTS III LLC**


                                   By:    s/ Christopher B. Wilson
                                          One of Its Attorneys


Christopher B. Wilson, ARDC No. 06202139
Peter B. Neumer, ARDC No. 06290330
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
Tel:  (312) 324-8400
Fax:  (312) 324-9400

*Attorneys for Plaintiff*

# EXHIBIT A

# PROMISSORY NOTE
(Subordinate Loan)
(AI)



| | |
|---|---|
| PROJECT NAME: | Pinehurst/Silver Leaf |
| WRI LOAN NO: | 07520 |
| ORIGINATING OFFICE: | Chicago |

$1,809,637 (U.S.)                                                    May 17, 2005

NOTICE TO BORROWER:  THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE AND ALSO PROVIDES FOR PAYMENT OF "ADDITIONAL INTEREST" IN THE NATURE OF DEFERRED INTEREST ON A SHARED APPRECIATION LOAN.

For value received, the undersigned, PINEHURST COMMUNITY IV, L.L.C., an Illinois limited liability company (*"Borrower"*), promises to pay to the order of WRI INVESTMENTS III LLC, a Washington limited liability company (*"Lender"*), at 1301 5th Avenue, Suite 3100, Seattle, WA  98101-2647, or such other place as Lender may from time to time designate in writing, the sum of One Million Eight Hundred Nine Thousand Six Hundred Thirty Seven Dollars ($1,809,637), or so much thereof as may from time to time be disbursed hereunder, in lawful money of the United States of America, together with interest on the unpaid principal balance from time to time outstanding hereunder from the date of the first disbursement of funds hereunder until paid at the rate set forth below.

1.  **Loan Documents.**  This Note evidences a loan (the *"Loan"*) from Lender to Borrower.  This Note is issued pursuant to that certain Loan Agreement (the *"Loan Agreement"*) executed concurrently herewith between the Borrower and Lender.  The terms (including meanings given to defined terms) and conditions of the Loan Agreement are hereby adopted and incorporated herein.  In addition, this Note is secured by that certain Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing (the *"Mortgage"*) executed concurrently herewith by Borrower as trustor/grantor, creating a lien on the real and personal property described therein and defined as the "Collateral", and certain other loan documents evidencing, securing, and otherwise governing the Loan, as more fully identified and described in the Loan Agreement (collectively, the *"Loan Documents"*).  Borrower hereby agrees to perform and comply with all of the agreements, terms, and conditions of all of the Loan Documents.

2.  **Interest Rate.**

2.1  **Note Rate.**  The outstanding principal balance of the Loan, any reimbursable collection costs, attorneys' fees, advances to protect security, or other advances made by Lender, and any other amounts then due under the Loan will accrue interest at an annual rate (as applicable, the "Note Rate") equal to either:  (a) 10.0% per annum so long as all payments due under the Loan Documents have been made in a timely manner, or (b) 12.0% per annum commencing automatically on the first day of the calendar month following Borrower's failure to make any payment when due under the Loan Documents, and without the need for any prior notification by Lender, with such higher rate continuing in effect unless or until: (i) Borrower has cured all such delinquent payments (in which case the Note Rate shall revert to the



rate specified in subsection (a) above), or (ii) an Event of Default (defined in the Standard Terms and Conditions) has occurred and the Default Rate is in effect pursuant to Section 2.2. below.

2.2  **Default Rate.** Upon the occurrence of any Event of Default (as defined in the Loan Agreement), and so long as such Event of Default is continuing, and at Lender's election but without the need for any prior notification to Borrower, interest shall accrue on the outstanding principal balance of the Loan, any reimbursable collection costs, attorneys' fees, advances to protect security, or other advances made by Lender, and any other amounts then due under the Loan at a rate equal to 15.0% per annum (the **"Default Rate"**). Accrual of interest at the Default Rate is designed to compensate Lender for certain damages caused by such default, including the additional expenses in servicing the Loan, the loss to Lender of the money due, and the frustration to Lender in meeting its other financial commitments. However, the accrual and payment of interest at the Default Rate shall not constitute a waiver of Lender's right to demand an immediate cure of such default or to pursue any other default remedy.

2.3  **Calculation of Interest.**  All interest shall be calculated by applying the applicable interest rate over a year of 360 days, times the amount on which the interest is to accrue, times the actual number of days that amount is outstanding (*including the first day but excluding the last day*).  For any Loan proceeds that are deposited in escrow based on Borrower's disbursement request, interest on such funds shall be calculated from the date Lender deposits such funds into escrow, regardless of whether and when Borrower satisfies all conditions for release of such funds from escrow.  Lender shall have no obligation to require the escrow agent to deposit escrowed funds in an interest-bearing account.

2.4  **Additional Interest.**  In addition to interest at the applicable rate, Lender shall be entitled to receive an additional amount of interest (**"Additional Interest"**) in connection with the release of Lender's Mortgage against each Lot or Unit comprising the Project.  The Additional Interest payable with respect to such Unit or Lot shall become due upon, and shall be paid from the escrow established for, the closing of the sale of such Unit or Lot.  Otherwise, such Additional Interest shall be payable in any event upon the Maturity Date (including maturity by acceleration), upon a full prepayment of the Loan, or upon any partial prepayment with respect to which Borrower requests a release of such Unit or Lot from the Mortgage.  Such Additional Interest shall be calculated in accordance with the Release Schedule attached as Exhibit B to the Loan Agreement.  Borrower agrees that such Additional Interest constitutes reasonable additional compensation to Lender for the additional risks undertaken by Lender in making a subordinate loan, and that Lender's right to receive Additional Interest (i) does not establish any relationship of partnership or joint venture between Borrower and Lender, and (ii) is not contingent upon or related to the profitability of the Project.

3.  **Loan Term.**  The Loan will become due and payable in full on August 13, 2007, unless Lender: (i) elects to disburse the Third Takedown Funds, in which case the Loan will become due and payable in full on May 12, 2008, or (ii) accelerates the Loan after an Event of Default, which acceleration may occur after and regardless of whether or not Lender has disbursed the Third Takedown Funds, in which case the Loan shall mature on the date of acceleration (the applicable date being referred to herein as the **"Maturity Date"**).  On the Maturity Date, Borrower must pay all outstanding principal, accrued interest, Additional Interest, and any other fees or charges owed to Lender or expenses for which it is entitled to receive reimbursement.  If Borrower fails to pay all such items on or before the scheduled Maturity Date set forth above, interest shall immediately and automatically accrue thereon at the Default Rate, without the need for any notice of default by Lender and without any further cure period.

### 4.  Repayment.

**4.1  Monthly Interest Payments.**  Borrower shall receive monthly invoices of accrued interest from Lender as provided in the Loan Agreement.  On or before the 15th day of each calendar month, Borrower shall pay interest that has accrued under the Loan during the immediately preceding month.   Such monthly interest payments shall commence in the first calendar month following Closing of the Loan and shall continue until all principal, then-due Additional Interest, then-due fees or reimbursements, or other then-due amounts have been paid in full.  However, such payments shall be made by Lender from the Interest Reserve if all conditions therefor under the Loan Agreement have been satisfied.

**4.2  Late Charge.**  Lender shall be entitled to receive a late charge equal to 5% of the amount of any monthly interest payment not received by the 15th day of each calendar month.  Such late charges may be assessed automatically, without the requirement of any prior notice and without waiver of Lender's right to accrue interest at the Default Rate, to accelerate the Loan, and/or to pursue any other default remedy under the Loan Documents.  Late charges constitute reasonable compensation to Lender for the additional time and expense of handling and accounting for late payments.

**4.3  Payments Upon Closings or Releases of Units or Lots.**  Borrower is required to pay certain reconveyance fees and expenses, Additional Interest, and Release Prices upon the closing of the sale of each Unit or Lot in the Project or in connection with Borrower's request to release Lender's *Mortgage* against any Unit or Lot.  The method for calculating such items and the other terms and conditions for release of Lender's *Mortgage* are set forth in Section 3.5 and Exhibit B of the Loan Agreement.

**4.4  Prepayment.**  Borrower may prepay the Loan in whole or in part at any time without additional premium or penalty of any kind so long as there is not currently an Event of Default under the Loan Documents.  Notwithstanding any such prepayment, Borrower shall be entitled to a release of all or any portion of Lender's security for the Loan only upon Borrower's fulfillment of all release conditions set forth in Section 3.5 of the Loan Agreement.

### 5.  Joint and Several Liability.
The liability hereunder of all individuals and entities comprising Borrower shall be joint and several.

### 6.  Business Purpose.
Borrower represents and warrants to Lender that the proceeds of this Note shall be used by Borrower exclusively for commercial and business purposes, and that none of the proceeds of this Note shall be used by Borrower for personal, family, or household purposes.

### 7.  Acceleration.
Upon the occurrence of an Event of Default in Borrower's obligations to pay any amount payable hereunder as and when due or any other Event of Default under this Note or under any of the other Loan Documents, Lender may declare, at its sole option and without notice to any party, the entire indebtedness evidenced hereby immediately due and payable in full.  Failure to exercise this option or any other right Lender may have shall not constitute a waiver of the right to exercise such option or any other right in the event of any subsequent Event of Default.

### 8.  Costs and Fees of Collection.
Borrower and every other person or entity at any time liable for the payment of the indebtedness evidenced hereby shall also be liable for all costs, expenses, and fees

28

incurred by Lender in collecting any amounts owing hereunder, including reasonable attorney's fees. Any judgment recovered by Lender shall bear interest at the Default Rate.

**9. Waiver of Presentment.** Borrower and every other person or entity at any time liable for the payment of the indebtedness evidenced hereby waive diligence, demand, presentment for payment, notice of protest, and notice of nonpayment of this Note. Every such person or entity further consents to any extension of the time of payment hereof or other modification of the terms of payment of this Note, the release of all or any part of the security for this Note, or the release of any party liable for the payment of the indebtedness evidenced hereby at any time and from time to time for any reason whatsoever. Any such extension or release may be made without notice to any of such persons or entities and without discharging their liability.

**10. No Waiver/Remedies Cumulative.** If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

**11. Applicable Law.** This Note is made with reference to and is to be construed in accordance with the laws of the state in which the Collateral is located, without application of any choice of law principles that would require the application of the law of any other state.

DATED as the day and year first above written.

BORROWER:         PINEHURST COMMUNITY IV, L.L.C.,
an Illinois limited liability company


By _____
    Charles Beird
    Its Manager

29

# EXHIBIT B

# GUARANTY



|  |  |
|---|---|
| PROJECT NAME: | Pinehurst/Silver Leaf |
| WRI LOAN NO: | 07520 |
| ORIGINATING OFFICE: | Chicago |

This Guaranty is made as of this May 17, 2005, by CHARLES BEIRD, a single man (*"Guarantor"*), for the benefit of WRI INVESTMENTS III LLC, a Washington limited liability company (*"Lender"*).

## RECITALS

A.   Lender has agreed to make a loan (the *"Loan"*) to PINEHURST COMMUNITY IV, L.L.C., an Illinois limited liability company (*"Borrower"*) in a principal amount up to $1,809,637 to finance the acquisition of certain real property located in Will County, Illinois (the *"Land"*) and the construction of certain improvements thereon (the *"Improvements"*).   The Land and Improvements to be constructed thereon by Borrower, together with all personal property now or hereafter acquired by Borrower and located on or acquired for use in connection with the Land or Improvements, are hereinafter collectively referred to as the *"Project"*.

B.   The Loan will be evidenced by, among other documents, a promissory note (the *"Note"*) executed by Borrower in favor of Lender in the amount of the Loan, and by a Loan Agreement (the *"Loan Agreement"*) executed by Borrower and Lender.   The Loan shall be secured by, among other documents, a Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing (the *"Mortgage"*).   The Loan Agreement, Note, Mortgage, and any and all other documents evidencing or securing the Loan are referred to as the *"Loan Documents."*   Terms used but not defined herein shall have the meanings assigned to them in the Loan Agreement.   If there is only one Guarantor, all plural references to the *"Guarantors"* herein shall be deemed to refer only to such Guarantor.

C.   Each Guarantor is affiliated with Borrower in various ways and will receive substantial benefit from the Loan.   Accordingly, to induce Lender to make the Loan, each Guarantor has executed this Guaranty knowing and intending that Lender will materially rely upon this Guaranty in entering the Loan Agreement and making the Loan.

## AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in order to induce Lender to enter the Loan Agreement and to make the Loan, Guarantors hereby agree as follows:

## 1. Scope of Guarantee.

**1.1**  Guarantors hereby absolutely and unconditionally guaranty and promise to pay to Lender or its order any and all indebtedness of Borrower to Lender and to perform any and all obligations of Borrower under the Loan Documents.  Guarantors acknowledge that they have reviewed and are fully familiar with the terms and conditions of the Loan Agreement, Note, Mortgage, and other Loan Documents, and fully understand the obligations of Borrower thereunder.

**1.2**  The words *"indebtedness"* and *"obligations"* are used herein in their most comprehensive sense and include any and all advances, debts, obligations and liabilities of any kind whatsoever, including the obligation to construct and complete the Project in a timely and lien-free manner, to make such deposits with Borrower as are necessary to keep the Loan "in balance," and to perform all of Borrower's other obligations with respect to the collateral for the Loan.

**1.3**  Notwithstanding the foregoing, Guarantors do not guarantee payment of *"Additional Interest"* (as defined in the Loan Agreement) on any portion of the Project that remains unsold by Borrower if and when Lender forecloses against the Project (whether judicially or non-judicially) or accepts a deed-in-lieu of foreclosure.

**1.4**  This Guaranty is continuing and shall terminate only upon full payment and performance by Borrower or Guarantors of all the terms, covenants, and conditions of the Loan that are guaranteed by Guarantors hereunder.

**2.  Guarantors' Independent Obligations.**  Guarantors understand that their obligations to Lender hereunder are direct, personal, and independent obligations to pay and perform all of Borrower's obligations under the Loan Documents, and not as a collection guarantor, surety, endorser, or other party having only secondary liability.  The obligations of each Guarantor hereunder are joint and several and independent of the obligations of Borrower, and a separate action or actions may be brought against any Guarantor whether or not separate actions are brought against Borrower or other Guarantors, and whether or not Borrower or other Guarantors are joined in any such action or actions.  Moreover, any partial payment by Borrower or other circumstance that operates to toll any statute of limitations as to Borrower shall operate to toll such statute of limitations as to Guarantors.  Lender's rights under this Guaranty shall not be exhausted until and unless all indebtedness and obligations hereby guaranteed have been paid and fully performed.

**3.  Modifications.**  Guarantors authorize Lender from time to time, without notice or demand to or approval by Guarantors, and even though Borrower's financial condition may have deteriorated or Guarantors may object:  (a) to renew, extend, or otherwise change the time for payment of the obligations of Borrower to Lender, (b) to increase the amount of the Loan, (c) to modify any other terms of the Loan, (d) to take and hold security for the payment of this Guaranty or any other indebtedness guaranteed, and exchange, enforce, waive, or release any such security; (e) to release Borrower or one or more Guarantors from obligations under the Loan or any guaranty thereof, (f) to apply such security and direct the amount or manner of sale thereof as the Lender in its sole discretion may determine; (g) to extend Lender's credit limits for loans to Borrower; or (h) to take any other actions with respect to the terms of or security for Borrower's indebtedness to Lender.  Notwithstanding any such action by Lender, Guarantors' unconditional guarantee shall remain in full force and effect and guarantee prompt payment and performance of all indebtedness and obligations owing by Borrower to Lender.

### 4. Guarantors' Waivers.

**4.1  Particular Actions by Lender.** Guarantors hereby waive any right to require Lender to: (i) give notice of acceptance of this Guaranty, notice of presentment or non-performance, demands for performance, or notice of the existence, creation, or modification of any indebtedness of Borrower under the Loan, (ii) record, perfect, maintain, or enforce any security for the obligations of Borrower, Guarantors, or any other guarantor of the Loan; (iii) proceed against Borrower, any Guarantor, any other guarantor, or any other party, including the filing of any claims in any bankruptcy, probate, or other proceeding; (iv) proceed against or exhaust any security received from Borrower, any Guarantor, or any other guarantor, (v) dispose of any repossessed collateral in a "commercially reasonable" or other manner as required by the Uniform Commercial Code or other applicable statute; or (vi) pursue any other remedy in Lender's power whatsoever. Guarantors agree that their obligations hereunder shall not be affected by any circumstances, whether or not referred to herein, that might otherwise constitute a legal or equitable discharge of a guarantor or a surety, provided Lender acts in good faith.

**4.2  Other Defenses.** Guarantors also waive any rights, claims, defenses, abatements, or rights of setoff or recoupment based on or arising out of: (i) any legal disability, discharge, or limitation of the liability of Borrower to Lender, whether consensual or arising by operation of law or any proceeding; (ii) the death or disability of Borrower, any Guarantor, or any other guarantors; (iii) any right to cause a marshaling of Borrower's assets, and (iv) any right to require Lender to exhaust any security for the performance of Borrower's obligations or to proceed against Borrower, any particular Guarantor, or any other guarantors in any particular order, whether such right exists by statute or otherwise.

### 4.3  Anti-Deficiency and One-Form-of-Action Rules.

**4.3.1** Guarantors understand that certain statutes, commonly referred to as "anti-deficiency" and "one form of action" rules, may prevent or inhibit a lender, after completing a non-judicial foreclosure or accepting a deed in lieu of foreclosure, from obtaining a deficiency judgment against a borrower or from collecting the amount of the deficiency from a guarantor, unless such borrower or guarantor has knowingly waived the application of such statutes and the benefits that it would otherwise receive from such statutes. This curtailment of a lender's rights to recover a deficiency from a guarantor is based in part on the fact that a lender's election of a non-judicial foreclosure or a deed in lieu of foreclosure from among other possible default remedies impairs or eliminates a guarantor's rights of subrogation and *reimbursement* against the borrower, the collateral, or any other surety for borrower's obligations.

**4.3.2** Guarantors understand that, unless they waive the protection that such rules would ordinarily confer, these "anti-deficiency" and "one form of action" rules might provide a defense to enforcement of this Guaranty if Lender elects to proceed with a non-judicial foreclosure or to accept a deed-in-lieu of foreclosure. Nevertheless, as an inducement for Lender to make the Loan, Guarantors hereby knowingly waives, in advance, all of their rights to rely on the anti-deficiency and one-form-of-action rules in connection with the impairment of its subrogation rights, as a defense to this Guaranty. Guarantors hereby acknowledge and agree that Lender may, in its sole discretion, exercise any right or remedy whatsoever that it may have against Borrower or any security held by Lender, including, without limitation, the right to foreclose upon any collateral for the Loan by judicial or non-judicial sale or to take a deed-in-lieu of foreclosure, without affecting or impairing in any way the liability of Guarantors hereunder (except to the extent that the indebtedness has been fully paid and performed), even if such election operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of Guarantors against

Borrower or any security for the Loan. Guarantors further waive any statutes that provide *"fair value"* protection by limiting a deficiency judgment to the difference between the property's fair market value (or foreclosure sale price, if greater) and the amount of the obligation being foreclosed.

        **4.4  Jury Trial.**  Guarantors hereby waive any and all rights to demand a trial by jury in any proceeding relating to this Guaranty.

        **4.5  Subrogation Rights.**  Until Lender shall have received full payment and performance of all of Borrower's obligations under the Loan, Guarantors shall have no right of subrogation and waive any right to enforce any remedy that Lender now has or hereafter may have against Borrower and waive any benefit of, and any right to participate in, any security now or hereafter held by Lender for the performance of Borrower's obligations to Lender.

        **5.  Subordination and Assignment of Borrower Debts to Guarantors.**  Guarantors hereby assign to Lender any and all rights they now or may hereafter have to receive payments from or other performance by Borrower on debts or other obligations of Borrower in favor of Guarantors. All rights of Guarantors under such debts and obligations of Borrower in favor of Guarantors are hereby subordinated to Lender's rights to payments from and performance by Borrower under the Loan Documents. Notwithstanding the foregoing assignment and subordination, prior to an Event of Default under the Loan, payments by Borrower to Guarantors may be collected and retained by Guarantors (subject to Lender's recourse against such payments under this Guaranty), but upon any Event of Default, all payments thereafter received by Guarantors under such debts shall be immediately paid over to Lender pursuant to this Guaranty or, if Lender so requests, any unpaid debts shall be collected, enforced and received by Guarantors, in trust, for the benefit of Lender, and be paid over to Lender on account of any unperformed obligations of Borrower under the Loan. Lender's receipt of such payments shall not reduce or affect in any manner the liability of Guarantors under the other provisions of this Guaranty, other than reducing the obligations under the Loan by the amount so paid.

        **6.  Warranties.**  Guarantors represent and warrant to Lender that:

        **6.1**  The financial reports of Guarantors and other written statements that have been furnished to Lender to induce Lender to make the Loan fairly and accurately present Guarantors' financial position as of the date of such statements. Guarantors have title to all assets shown in such financial reports, there has been no material adverse change in the financial condition of any Guarantor since the date of the last report so furnished, and Guarantors hereby agree to give Lender written notice of any material adverse change in the financial condition or assets of any Guarantor, with such notice to be given within 10 days after Guarantors become aware of such material adverse change;

        **6.2**  There are no actions, suits or proceedings pending or, to Guarantors' actual knowledge, threatened against any Guarantor that might result in any material adverse change in the financial condition of any Guarantor; and

        **6.3**  Guarantors (and the persons executing this Guaranty on behalf of any non-individual Guarantors) have the requisite power, authority, capacity, and legal right to execute and deliver this Guaranty; no further consent, approval, resolution, or other authorization is required, and neither the execution nor delivery of this Guaranty nor compliance with the terms hereof will conflict with or constitute a

breach or default under any agreement or instrument to which Guarantors are a party or will provide a basis for acceleration of any indebtedness of Guarantors to any party whatsoever.

All such warranties shall be deemed to be continuing representations and warranties until full payment and performance of the Borrower's obligations under the Loan Documents.

    **7. Assignment.** This Guaranty shall benefit any and all successors and assigns of Lender, including the assignees of or participants in any indebtedness hereby guaranteed. Lender may, in its sole discretion, sell or assign participation interests in the Loan and this Guaranty, in whole or in part, without any requirement to give notice to or receive the approval of Guarantors, and may disclose any and all financial information about Guarantors to any actual or proposed assignee or participant in the Loan. Guarantors may not assign or delegate any of their obligations under this Guaranty without Lender's prior written consent, and any attempt to do so without such consent shall be of no effect and shall not release Guarantors from any obligation hereunder.

    **8. Guarantors' Ongoing Reporting Obligations.** Each Guarantor shall provide Lender with updated financial statements for such Guarantor on an annual basis within 90 days after the end of each calendar year and shall notify Lender in writing of any change of address, telephone number, facsimile number, marital status (if an individual), or legal organization (if an entity) within 10 days after such event.

    **9. General Provisions**

        **9.1 No Waiver.** No forbearance or delay on the part of Lender in the exercise of any power, right, or privilege hereunder shall operate as a waiver thereof, nor shall a single or partial exercise of any such power, right, or privilege preclude any other or further exercise of such power, right or privilege. All powers, rights, and privileges hereunder are cumulative with and not exclusive of any powers, rights, or privileges otherwise available to Lender at law or under any documents that shall evidence or secure any loans from Lender to Borrower.

        **9.2 Entire Agreement.** Except as provided in any other written agreement now or in the future executed between Lender and Guarantors, this Guaranty shall constitute the entire agreement of Guarantors with Lender with respect to the subject matter hereof. No representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon Lender unless expressed in this Guaranty. No provision of this Guaranty or right of Lender hereunder can be waived nor can Guarantors be released from Guarantors' obligations hereunder except by a writing duly executed by an authorized representative of Lender.

        **9.3 Severability of Provisions.** Any provision of this Guaranty that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

        **9.4 Consultation with Counsel.** Guarantors acknowledge that they has consulted with counsel of its choice or had an adequate opportunity to do so in connection with execution of this Guaranty.

        **9.5 Costs and Reasonable Attorneys' Fees.** Guarantors shall pay all of Lender's expenses incurred in any effort to enforce any terms of this Guaranty, whether or not any suit is filed, including, without limitation, reasonable attorneys' fees and disbursements, foreclosure costs, and title

charges, and including all attorney's fees and costs incurred by Lender in connection with a bankruptcy or other insolvency proceeding of Borrower or any Guarantor and relating to any kind of review, claim, approval, relief, or procedure whatsoever in such bankruptcy.  Such sums shall be immediately due and payable and shall bear interest from the date of disbursement at the Default Rate set forth in the Loan Documents, or the maximum rate that may be collected from Borrower under applicable law, if less.

**9.6   Community and Trust Property.**  Each Guarantor who is a natural person and who is married agrees, represents, and warrants that:  (i) he or she is executing this Guaranty with the knowledge and consent of his or her spouse, and has authority to bind his or her marital community to the terms and conditions hereof, and (ii) recourse for his or her obligations under this Guaranty shall be available against his or her separate property and any and all property of his or her marital community, whether now existing or hereafter acquired, together with any proceeds thereof.  Each such Guarantor further agrees that recourse under this Guaranty shall also be available against any such property that is subsequently conveyed to a living, family, or other trust in which such Guarantor and/or his or her spouse is a settlor, trustee, or beneficiary or otherwise controls.

**9.7   Governing Law.**  This Guaranty shall be governed by and construed in accordance with the laws of the State in which the Project is located, without regard to the choice of law rules of such State.

Executed as of the date first set forth above.

GUARANTOR:

CHARLES BEIRD

Social Security No.:     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

Home Address:     211 Melody Lane
Vernon Hills, IL 60061

Home Telephone:     847-680-3260

Home Fax No.:

## Exhibit A

### DESCRIPTION OF REAL PROPERTY

FIRST TAKEDOWN PARCEL

LOTS 1, 2, 30, 31, 65, 66, 67, 68, AND 69 IN SILVER LEAF SUBDIVISION UNIT ONE, PHASE ONE, BEING A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF SECTION 14, TOWNSHIP 35 NORTH, RANGE 9 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 18, 2003 AS DOCUMENT NO. R2003-199628, IN WILL COUNTY, ILLINOIS

LOTS 70, 71, 72, 73, 74, 75, 76, 78, 79, 80, 81, 121, 122, 123, 124, 125, 126, 127 AND 128 IN SILVER LEAF SUBDIVISION UNIT ONE, PHASE TWO, BEING A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF SECTION 14, TOWNSHIP 35 NORTH, RANGE 9 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED DECEMBER 15, 2003 AS DOCUMENT NO. R2003-303180, IN WILL COUNTY, ILLINOIS.

SECOND TAKEDOWN PARCEL

[TO BE PROVIDED SUBSEQUENT TO CLOSING]

THIRD TAKEDOWN PARCEL

[TO BE PROVIDED SUBSEQUENT TO CLOSING]

# EXHIBIT C

**WRI Investments III LLC**
1301 Fifth Ave., Suite 3100
Seattle, WA 98101-2647
Tel (206) 264-2240
Fax (206) 264-2241

May 29, 2008

Pinehurst Community IV, L.L.C., an Illinois
limited liability company
c/o Pinehurst Custom Homes, LLC
1580 South Milwaukee Avenue, Suite 507
Libertyville, Il. 60048

*Via Regular Mail
and Via FedEx*

David J. Schwab
c/o Richards, Ralph & Schwab, Chartered
175 E. Hawthorn Parkway, Suite 345
Vernon Hills, IL 60061

Charles Beird
211 Melody Lane
Vernon Hills, IL 60061

*Via Regular Mail
and Via FedEx*

|  |  |
|---|---|
| **NOTICE OF DEFAULT** | |
| Re:  WRI Investments III LLC Loan No.: | **07520** |
| Project Name and Location: | Silver Leaf / City of Joliet, Will County, Illinois |
| Borrower: | Pinehurst Community IV, L.L.C., an Illinois limited liability company |
| Notification of: | • Insurance Deficiencies<br>• Delinquent Interest & Late Fees<br>• Delinquent Financial Statements<br>• Loan Maturity<br>• Senior Loan in Default |

Dear Borrower and Guarantor,

The Borrower referenced above (***"Borrower"***) owes money and performance of other obligations to WRI Investments III LLC (***"Lender"***) under a subordinate loan (the ***"Loan"***) made in the total principal amount of $1,809,637 with respect to the acquisition and development of the Silver Leaf project in the City of Joliet, Will County, Illinois. The Loan is evidenced, governed and secured by a Loan Agreement, Promissory Note, Mortgage or other security instrument, and various other documents dated on or about May 17, 2005 (as such documents may have been amended, the ***"Loan Documents"***).

The Loan is guaranteed by Charles Beird (the ***"Guarantor"***) pursuant to a Guaranty entered into for the benefit of Lender dated May 17, 2005 (the ***"Guaranty"***).

Loan No. 07520
Date: May 29, 2008
Page 2

Capitalized terms used but not defined herein shall have the meaning given to them in the Loan Documents.

The Borrower has failed to comply with the following provisions of the Loan Documents, and the Guarantor is also responsible for performance of these obligations:

❖ Insurance Deficiencies. Lender has been informed that the property and liability insurance in effect with respect to Borrower and the Project is not in compliance with the requirements in the Loan Documents (usually found in Article 6 of the Standard Terms and Conditions attached as Exhibit D of the Loan Agreement, but possibly modified or supplemented in other sections of the Loan Agreement) for the following reasons:

   ● Policy has been cancelled as of March 27, 2008 for non-payment of premium

The instances of non-compliance with the insurance requirements in the Loan Documents that are described above, together with any additional insurance deficiencies that occur after the date of this letter, are referred to as the *"Insurance Deficiencies."*

❖ Delinquent Interest. The monthly interest payments that became due on September 1, 2007 and continuing to May 1, 2008 have not been paid. The total amount of previously-missed monthly interest payments, together with any further monthly interest payments that are missed after the date of this letter (with associated late charges), is referred to herein as the *"Delinquent Interest."*

❖ Financial Statements. Pursuant to Section 5.4.7 of Exhibit D to the Loan Agreement, Borrower shall provide Lender with copies of updated financial statements for the Borrower and Guarantor within 90 days after the end of each calendar year. Lender has not received updated financial statements for Pinehurst Community IV, L.L.C.

❖ Loan Maturity. Pursuant to the terms of the Loan Documents, the Loan matured on May 12, 2008, but remains unpaid, and is therefore in default.

❖ Senior Loan in Default. We are in receipt of a default letter dated April 24, 2008 from the senior lender, State Financial Bank n/k/a Associated Bank. Pursuant to Section 7.1.10 in Exhibit D of the Loan Agreement, a default under the senior loan is considered a default under the Loan. **Therefore, pursuant to Section 7.3.2 of Exhibit D of the Loan Agreement, the Loan is being accelerated and is immediately due and payable.**

This letter constitutes notice of an Event of Default and a demand by Lender for immediate payment from Borrower and Guarantor, who are recipients of a copy hereof, of all amounts due under the Loan, including but not limited to all principal, interest,

Loan No. 07520
Date: May 29, 2008
Page 3

Additional Interest, reimbursable costs and fees. The following represents a breakdown of the total amount owing under the Loan as of the following date, but you will need to consult with the Lender to obtain an updated balance before arranging payment in full of the Loan:

**Total Outstanding Amount as of May 29, 2008**

| | |
|---|---|
| Outstanding Principal[*] | $1,737,691.12 |
| Accrued But Unpaid Interest at Note Rate plus Late Fees[+] | $147,138.81 |
| Accrued But Unpaid Interest at Default Rate[‡] | $11,584.64 |
| Outstanding Additional Interest Amount[∞] | $476,824.40 |
| Total[☒]: | $2,373,238.97 |

[*]  Includes principal previously disbursed from the Interest Reserve to pay interest.

[+]  Monthly interest payments due September 1, 2007, to May 12, 2008, plus late fees for missed payments.

[‡]  Monthly interest payments due May 13, 2008 to May 29, 2008.

[∞]  Calculated based upon the terms as shown in Section B.1 of Exhibit B of the Loan Agreement.

[☒]  Interest, collection costs, and attorneys' fees continue to accrue until the Loan is paid in full. Lender will provide a current total outstanding amount at any time upon Borrower's request.

The Loan Documents include provisions for accrual of interest at the Default Rate following an Event of Default, as well as recovery of Lender's collection costs and attorneys' fees. Therefore, commencing on May 13, 2008, interest has accrued and shall continue to accrue at the Default Rate of 15.0%, and Lender may be incurring additional costs and attorneys' fees, all of which are reimbursable by the Borrower and Guarantor upon Lender's demand.

This letter is not and shall not be construed as a waiver of any other default that may now exist or hereafter arise under the Loan Documents, or of any rights or remedies available to Lender under the Loan Documents or applicable law, including but not limited to Lender's rights to pursue available remedies, including appointment of a receiver or commencement of a foreclosure. Any failure or delay by Lender in exercising its rights or remedies with respect to the Loan shall not operate as a waiver of or as an agreement to forbear with respect to any rights that Lender may have under the Loan Documents or applicable law. Lender reserves the right to demand strict compliance with the terms and conditions of the Loan Documents and to pursue any and all default remedies.

Finally, please be advised that any oral understandings or expressions of agreement between Borrower and Lender shall not constitute a binding agreement unless and until a

Loan No. 07520
Date: May 29, 2008
Page 4

binding, written agreement has been fully executed by and between all parties, such agreement has been mutually delivered, and any conditions of effectiveness stated therein have been fully satisfied or waived by the party entitled to waive such requirement. Therefore, Lender's rights and remedies are and will continue to be governed solely by the terms of the Loan Documents, as they may be modified only by written amendment, and not by anything stated or orally agreed to in any discussions.

We encourage you and the Guarantors to take whatever action is needed to immediately repay the Loan in full. If you have any questions, or if you would like to confirm the current amount due and owing under the Loan Documents, please do not hesitate to contact Steve Denenberg at (847) 273-8720.

NO ACTION TAKEN OR NOT TAKEN BY LENDER TO DATE, NOR ANY FURTHER DELAY BY LENDER IN COMMENCING ANY REMEDY SHALL BE CONSTRUED AS A WAIVER OF OR PROMISE TO FORBEAR FROM EXERCISING ANY AND ALL RIGHTS AND REMEDIES AVAILABLE TO LENDER UNDER THE LOAN DOCUMENTS. THE LOAN DOCUMENTS EMBODY THE FINAL, ENTIRE AGREEMENT OF BORROWER AND LENDER RELATING TO THE SUBJECT MATTER HEREOF, AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF BORROWER AND LENDER. THERE ARE NO ORAL AGREEMENTS BETWEEN BORROWER AND LENDER.

Sincerely,

WRI INVESTMENTS III LLC
a Washington limited liability company

By  Weyerhaeuser Realty Investors, Inc.
    a Washington corporation
    Its Manager

By  _____
    Lorrie D. Scott
    Senior Vice President

By  _____
    Edwin I. Stephens
    Vice President

Loan No. 07520
Date: May 29, 2008
Page 5

cc:

Associated Bank, N.A.                           *Via Regular Mail*
16 North Spring Street                           *and Via FedEx*
Elgin, IL 60120
Attn: Ron Pesenko

Meltzer, Purtill & Stelle LLC                    *Via Regular Mail*
1515 East Woodfield Road                         *and Via Courier*
Schaumburg, IL 60173
Attn: Allen C. Balk